UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRAIG COLLINS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| STATE FARM LLOYDS, | § | Civil Action No. 3:21-cv-0982-X |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are three motions to strike experts: two from defendant State Farm Lloyds' ("State Farm") [Doc. Nos. 25 and 34] and one from plaintiff Craig Collins [Doc. No. 31].  For the reasons below, the Court **DENIES** all three motions.

## I.  Background

Collins' Dallas home was damaged by a tornado on October 20, 2019.  He filed a claim with State Farm on his homeowner's insurance policy, and State Farm conducted three inspections of his property over the next few months.  State Farm and Collins each hired their own engineering firm to inspect his property, leading to two reports that differ as to the extent of tornado-caused damage.  State Farm paid Collins for the damages it believed the tornado caused, but Collins believes State Farm owes him far more.

Collins sued State Farm, seeking damages and attorney's fees and alleging (1) breach of contract, (2) violations of the Texas Prompt Payment of Claims Act, (3) violations of the Texas Deceptive Trade Practices Act, and (4) breach of the

1

common-law duty of good faith and fair dealing.[1]  State Farm timely removed the case to federal court and moved for summary judgment on all of Collins' claims except breach of contract.  The Court granted in part State Farm's motion, leaving only Collins' claims for breach of contract and violations of the Texas Prompt Payment of Claims Act.[2]

Collins designated experts David Day and Irving Napert,[3] and State Farm now moves to strike both.  And State Farm designated expert Alan Berryhill,[4] whom Collins now moves to strike.

## II.  Legal Standards

Federal Rule of Evidence 702 governs the admissibility of testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education."[5]  Rule 702 requires that (1) the expert's knowledge will assist the trier of fact in "understand[ing] the evidence" or "determin[ing] a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert has reliably applied the principles and methods to the facts of the case."[6]  The Court must act as a gatekeeper,

---

[1] Doc. No. 1-4 at 15–18.

[2] Doc. No. 57.

[3] Doc. No. 26 at 9–11.

[4] Doc. No. 33 at 8–9.

[5] FED. R. EVID. 702.

[6] *Id.* at 702(a)–(d).

2

admitting expert testimony that is "not only relevant, but reliable."[7]  "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the [R]ule 702 test."[8]

Expert testimony is relevant if it helps the trier of fact "understand the evidence or [] determine a fact in issue,"[9] and it is reliable if "the reasoning or methodology underlying the testimony is scientifically valid."[10]  Such testimony must be "more than subjective belief or unsupported speculation," and the Court need not admit testimony based on indisputably wrong facts.[11]  In conducting its analysis, the Court focuses "solely on principles and methodology, not on the conclusions that they generate."[12]  And generally, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[13]

## III.  Analysis

The Court will address each of the three challenged experts in turn.

---

[7] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("In *Daubert*, the Supreme Court instructed district courts to function as gatekeepers[.]").

[8] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

[9] *Daubert*, 509 U.S. at 591 (quoting FED. R. EVID. 702(a)).  *Daubert* further notes that the "baseline" of relevant evidence is defined in Rule 401 as "that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *Id.* at 587 (quoting FED. R. EVID. 401).

[10] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93).

[11] *Daubert*, 509 U.S. at 590; *see Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

[12] *Daubert*, 509 U.S. at 595; *see, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153–54 (1999).

[13] *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

### a. Day

In its motion to strike Day's testimony, State Farm first argues that his opinions are irrelevant (and therefore unreliable) because he did not personally inspect Collins' property before filing his first report and because a consultant his firm employed drafted Day's first report before Day himself edited and approved the final version.[14]   State Farm extrapolates this information to conclude that Day "did not . . . follow a methodology when coming to his opinions" and "the only basis" for his conclusions was his experience.[15]

But Day's report explains his methodology.  To form his opinions, Day reviewed records and reports from State Farm, Collins, State Farm's experts, and the two engineering firms hired by each party to assess the property.[16]   He interviewed Collins and studied photographs taken after the storm.[17]   Day relied on an inspection conducted by his employee when writing his first expert report.[18]   He personally visited Collins' property after filing his first report, and he filed a second report after his visit that confirmed his initial conclusions and added a few new conclusions.[19]

Day's report also provides the bases for his conclusions.[20]   Day describes himself as "a licensed engineer" who "h[as] been doing Structural Forensic

---

[14] Doc. No. 27 at 9–10.

[15] *Id.* at 10.

[16] Doc. No. 26 at 291–92, 295.

[17] *Id.* at 248, 291–92.

[18] *Id.* at 288, 291–92.

[19] *Id.* at 253, 299.

[20] *Id.* at 248–53.

Engineering since 1988" and "h[as] been designing, inspecting, and certifying steel, concrete, and wood framed structures since 2001."[21]  He "h[as] performed over 1,000 structural forensic inspections[,] with approximately 50% being wind assessment inspections."[22]

State Farm's argument that Day's conclusions are unreliable because Day relied on his own experience when forming those opinions fails under both *Daubert* and Rule 702.  *Daubert* forbids expert opinions that are merely "subjective belief or unsupported speculation," but an expert's reliance on past experience raises his opinions past that level.[23]  The *Daubert* framework permits experts to "bas[e] testimony upon professional studies or personal experience" so long as the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[24]  Furthermore, Rule 702 expressly recognizes experts qualified "by knowledge, skill, *experience*, training, or education."[25]  The Court finds that Day relied on his extensive experience in forming his conclusions, and State Farm has provided no reason to doubt that he will testify with the same "intellectual rigor" used by experts in the field.

---

[21] Doc. No. 29 at 288.

[22] *Id.*

[23] *Daubert*, 509 U.S. at 590.

[24] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

[25] FED. R. EVID. 702 (emphasis added).

Ultimately, State Farm's objections to Day's methodology and conclusions "go to the weight of the evidence, not to its admissibility," and therefore "should be left for the jury's consideration."[26]

State Farm further argues that "Day's opinions are unreliable because they fail to rule out or even consider alternative causes" of the property damage,[27] but this argument is inapposite.  "Elimination of alternative possibilities is one method of arriving at a result reliably, but it is not the only method.  While failing to eliminate other possible causes may diminish the strength of an expert's opinion, the admissibility of that opinion is not affected."[28]  And State Farm misinterprets Fifth Circuit caselaw when it asserts that "exclusion of alternative causes" is "a necessary ingredient for an expert opining on the causation of a condition."[29]  To make this argument, State Farm cites a case that dealt with an airplane crash involving a "variety of intervening events," so an expert's report that "wholly fail[ed] to address and rule out the numerous other potential causes . . . would likely have been inadmissible at trial under *Daubert*."[30]  But in this case, the damage to Collins' home was either caused solely by a tornado, as Day believes, or it wasn't.  By maintaining

---

[26] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (cleaned up).

[27] Doc. No. 27 at 11.

[28] *Arlington S. Hills, LLC v. Am. Ins. Co.*, 51 F. Supp. 681, 690 (N.D. Tex. Sept. 12, 2014) (O'Connor, J.) (cleaned up).

[29] Doc. No. 27 at 11 (citing *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000)).

[30] *Michaels*, 202 F.3d at 753.

that the tornado alone damaged Collins' home, Day necessarily "exclude[d] other causes" such as foundation-shifting and age-related deterioration.[31]

The Court finds that Day's testimony is both relevant and reliable under the standards articulated in Rule 702 and *Daubert*. Accordingly, the Court **DENIES** State Farm's motion to strike Day.

### b. Berryhill

Collins' motion to strike Berryhill's testimony first argues that Berryhill is unqualified to opine on either the causation of damages or the reliability of engineering reports.[32]

State Farm responds that Berryhill is qualified to opine on damages to Collins' home due to his "more than 30 years [of] construction, environmental, and consulting experience," including "residential storm and water restoration, roofing, and residential [] construction."[33] The Court agrees. Berryhill is president and owner of a company that "provides consulting services regarding construction, cause of damage, and cost of repair."[34] Since Berryhill's report consists of his "opinions regarding wind damage" and the "scope and cost of repair for damage," it is well within his experience.[35]

---

[31] *See, e.g.*, Doc. No. 26 at 114 (Day, in his deposition, stating that "[u]nless there was another tornado, there is nothing else that could have put that amount of pressure [on Collins' roof] to do that much damage"); *id.* at 115–16 (opining that damage to Collins' rafters could not have been caused by "foundation movement" or "improper installation").

[32] Doc. No. 32 at 5–7.

[33] Doc. No. 47 at 419.

[34] *Id.*

[35] Doc. No. 33 at 33. Collins acknowledges that a court in the Southern District of Texas deemed Berryhill qualified to testify about causation in a case involving water damage after Hurricane

As to Berryhill's testimony about the engineering reports, Berryhill is qualified to opine on them due to the knowledge, skill, training, and experience he obtained through over thirty years in the construction industry.[36]  Berryhill may lack formal engineering education, but that is only one valid path to expertise and "the key is not whether a specialist would be preferable, but whether a witness with only a general background can still help."[37]

Collins next argues that Berryhill's testimony is irrelevant because it is cumulative with State Farm's other experts' reports.[38]  Collins points to the expert testimony of Frank Griffin (who opined on the causation of Collins' damages and criticized Collins' own expert, Day) and Gary Boyd (who opined on the extent of Collins' damages and estimated the cost of repairs).

Whether to admit expert testimony that overlaps to some degree with other expert testimony, or whether to exclude it as cumulative, "is a matter for the determination of the court in the exercise of sound discretion."[39]  An expert's report might be cumulative if it merely affirms undisputed prior testimony,[40] but might not be "needlessly cumulative" where an expert "performed his own investigation of the

---

Dolly.  Doc. No. 51 at 4 (citing *Salinas v. State Farm Fire & Cas. Co.*, No. B-10-194, 2012 WL 5187996 (S.D. Tex. Feb. 23, 2012)).  Collins attempts to distinguish that case because it was primarily about water damage, but he does not attempt to refute the court's conclusion that Berryhill's "extensive experience in the construction and remediation industries qualifies him as an expert regarding the cost of repairs."  *Salinas*, 2012 WL 5187996, at *9.

[36] *See* FED. R. EVID. 702 (stating that experts may be qualified "by knowledge, skill, experience, training, *or* education" (emphasis added)); Doc. No. 47 at 419.

[37] *Salinas*, 2012 WL 5187996, at *4.

[38] Doc. No. 32 at 8 (citing FED. R. EVID. 403).

[39] *U.S. v. Kalmutz*, 309 F.2d 437, 440 (5th Cir. 1962) (cleaned up).

[40] *Perkins v. Tex. Dep't of Crim. Justice*, 127 F. App'x 142, 144 (5th Cir. 2005).

8

property."[41]   Berryhill inspected Collins' property himself and, while his report reaches mostly the same conclusions as Griffin's and Boyd's, his methodology and subsidiary conclusions differ enough to form a unique perspective.   Berryhill and Griffin both critique Day's expert report and opine on causation of damages, but their criticisms are not identical and neither are their conclusions.[42]   Berryhill and Boyd both offer detailed analyses of the differences between State Farm's and Collins' damages estimates, and while both experts ultimately agree that Collins' estimate is too high, their line-by-line review of each itemized damage claim is far from identical.[43]

The Court finds that Berryhill is qualified to provide expert testimony regarding causation of damages and the reliability of engineering reports.   And the Court finds that Berryhill's testimony is not needlessly cumulative.   Accordingly, the Court **DENIES** State Farm's motion.

### c.  Napert

State Farm moves to strike Napert's testimony, claiming it is unreliable because it fails to consider and exclude alternate causes of damages, relies solely on Napert's own experience, and contains inaccuracies.[44]

---

[41] *Arlington*, 51 F. Supp. 3d at 691–92.

[42] *Compare* Doc. No. 33 at 35–36 *with* 58–71.

[43] *Compare* Doc. No. 33 at 37–45 *with id.* at 140–51.

[44] Doc. No. 35 at 8–12.

State Farm's argument that Napert failed to consider alternate causes is irrelevant because Napert does not intend to offer any opinions on causation.[45] Regardless, as discussed above, failing to exclude other causes does not automatically render an expert opinion inadmissible.  And State Farm's argument that Napert's conclusions are unreliable because Napert relied solely on his own experience when forming them fails under both *Daubert* and Rule 702, as discussed above.

Many of the inaccuracies State Farm alleges in Napert's report were corrected in Napert's amended report,[46] and the rest are proper subjects for cross-examination. State Farm disagrees with Napert's methods and conclusions, but that is not the standard for excluding experts.

Napert's testimony will not touch on causation and was properly based on Napert's own experience.  State Farm will be free to cross-examine Napert to uncover any alleged errors that Napert did not already correct.  Accordingly, the Court **DENIES** State Farm's motion.

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** all three motions to strike experts.

**IT IS SO ORDERED** this 8th day of March, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[45] Doc. No. 45 at 20–21.

[46] *See* Doc. No. 45 at 25.

10